IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Zimliki and Lana Zimliki    :
                                             :
                v.                   : No. 428 C.D. 2015
                                             : Submitted: September 17, 2015
New Brittany II Homeowners'    :
Association,                        :
                    Appellant     :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE P. KEVIN BROBSON, Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI              FILED: October 15, 2015


        The New Brittany II Homeowners' Association (Association)[1] appeals from an order of the Court of Common Pleas of York County (trial court) granting Dr. David and Lana Zimliki's (Homeowners) request for declaratory judgment and finding them in compliance with the Association's Declaration of Restrictions, Covenants and Conditions (Declaration). For the reasons that follow, we affirm.

---

[1] We presume that the Association is a non-profit corporation organized pursuant to the Uniform Planned Community Act. Act of December 19, 1996, P.L.1336, 68 Pa. C.S. §§5101-5414.

The Declaration sets forth the process homeowners are required to follow when they wish to commence construction or improvements on their property. The Association administers the Declaration, which is applicable to the homes in the subdivision. Under the Declaration, only garages that are attached to a dwelling and only such accessory structures that are not used for storage and that are deemed acceptable by the Design Review Committee (Committee) are permitted.[2] Homeowners own a home in the New Brittany II subdivision and are bound by the Declaration.

In June 2011, Homeowners applied to Manchester Township for a building permit to erect a "detached garage" on their property. (Reproduced Record (R.R.) at 138a.) Manchester Township issued Homeowners the building permit to construct a detached "[a]ccessory structure (garage)." (R.R. at 140a.)

---

[2] The relevant provision in the Declaration states:

2. Review and Approval Required. Before the commencement of construction of any structures or other improvements on any Lot or any portion of the land included in the Property, all plans and specifications pertaining to building and site design and the construction of any such improvements, including subsequent additions and alterations or site improvements, shall be subject to review and prior written approval by the Committee. All decisions of the Committee shall be final and not subject to review by any court, unless clear and convincing evidence shows that the Committee willfully and arbitrarily violated this Declaration in rendering any such decision. Construction shall be performed only in accordance with the plans and specifications actually approved by the Committee.

(R.R. at 150a.)

Dr. Zimliki then wrote to the Association[3] informing it of their plan to build a "garage" and providing it with specifications and sketches of the proposed structure.[4]  (R.R. at 141a.)  The structure was to be 24 feet by 24 feet, with two large overhead doors and located at the end of Homeowners' driveway facing the street.  Moreover, the materials used to construct the structure were to exactly match the brand, color, size and shape of materials used in building Homeowners' house as well as the house's design.

The relevant provisions in the Declaration that apply are contained in a subsection to Article II ("Architectural Requirements and Controls"), Section A ("Design, Review and Approval"), and provide the following:

> 2. Accessory Buildings; Playground Equipment.  *No detached storage sheds or utility buildings may be*

---

[3] The body of the letter provides:

> As you may have noted the shed previously on my property has been sold and removed from the property.  I have contacted a highly recommended local contractor Wood Originals Inc. (woodoriginalsinc.com) from Bethel, PA to build a garage in lieu of the previous shed.  Every material used to construct the garage will be of the exact brand, color, size and shape of the materials used in the construction of our house.  As well the design of the garage mimics the design of the current house.  I have attached some sketches of the garage as well as some examples of Wood Originals [sic] structures of similar characteristics.  All township criteria have been met and approved….

(R.R. at 141a.)

[4] The Association notes in its brief that, "The letter/application references the structure as a 'garage' four times."  (Brief of Appellant at 5) (citations omitted).

*constructed or placed on any Lot. One accessory building* per Lot *for purposes other than storage may be permitted* in the discretion of the Committee only (a) if the design of such building and materials utilized in the construction of such building match exactly the design and materials utilized in the dwelling house located on such Lot, and (b) if such building is located within the setback lines applicable to the dwelling house located on such Lot. Playground equipment may be approved by the Committee upon submission of plans fully detailing the proposed equipment.

\* \* \*

8. Garages. Each Lot on which a house is constructed shall also have constructed on such Lot an *attached garage for the storage of at least two motor vehicles, but not more than four* (4).

(R.R. at 153a) (emphasis added).

Following a meeting, the Association denied Homeowners' application, disallowing the building of the structure presumably because the Declaration only allowed garages that were attached to a house. In July 2011, Dr. Zimliki appeared at an Association meeting to discuss plans for building the structure, which had not yet been approved by the Committee. The Association neither approved Homeowners' proposed structure nor reconsidered the previous denial.

Notwithstanding that under the by-laws that before anything can be constructed it must receive approval of the Committee, in September 2011, Homeowners built the structure as proposed in their application without the

Association's approval.  In April 2012, the Association's counsel sent Homeowners a letter asking them to comply with the Declaration.  Homeowners then sought declaratory judgment.[5]

Before the trial judge,[6] Dr. Zimliki testified that the structure's use was not as a garage, the use he originally received approval for from Manchester Township and the proposed use he sought the Committee to approve, but was used as a woodworking workshop where he enjoys restoring clocks, building furniture and undertaking other woodworking projects.  He also testified that the structure's large, overheard, garage-style doors are not used for the purpose of allowing motor vehicles to go in and out of the structure, but rather to allow for the easy entry and exit of large woodworking equipment and materials.

Dr. Zimliki further testified that he made sure that the materials used and design for the structure were an exact match to those of his house.  Homeowners' witnesses all testified that the structure was used for recreation and entertainment as both Homeowners' family, as well as friends and neighbors use the structure to watch television, play video games and host parties.  Homeowners'

---

[5] On appeal, no one challenges the jurisdiction of the trial court to hear the declaratory action before the Committee had rendered a decision.  We note that if the Committee had been allowed to exercise its powers under the Declaration, the standard would go to whether it exercised its discretion in good faith.  68 Pa. C.S. §5113.  ("Every contract or duty governed by this subpart imposes an obligation of good faith in its performance or enforcement.")

[6] Homeowners both testified, as did Joshua and Christina Warfel, Homeowners' next door neighbors; Paul Delmonte, Homeowners' other next door neighbor; Jeffrey Henry, a Board Member of the Association; and Thomas Pendergast, an individual who does not own property in the subdivision but has a real estate interest in the subdivision.

witnesses also testified that the structure was never used for storage, maintenance or repair of motor vehicles. Meanwhile, the Association's witnesses admitted that they had never been inside of the structure and had no personal knowledge of the structure's actual use.

Not remanding to allow the Committee to consider the matter, the trial court found that Homeowners are in compliance with the Declaration as the structure is not a garage or a storage area, but rather is used as a workshop, an entertainment area and a recreational building.[7] In making its decision, the trial court found that although the structure has two overhead garage style doors and sits at the end of a portion of the driveway, the structure does not look like a garage and, moreover, the exterior of the structure is not determinative of what it actually is.[8] The court also noted that there is no evidence that vehicles have ever been stored, repaired or maintained in the structure. Lastly, the court found that although there is some storage in the structure, the storage is incidental to the use and purpose of the structure as a workshop and entertainment area and it is not indicative of the nature of the structure. The Association appealed.[9]

---

[7] The trial court noted that there is a stereo, a refrigerator and two ceiling fans in the structure and that portions of the structure are carpeted.

[8] In further establishing its point, the trial court discussed examples of restaurants (namely Quaker Steak and Lube and Motor Supply Company) that have the appearance of vehicle repair shops on the outsides despite being restaurants.

[9] "Our standard of review in a declaratory judgment action is limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion." *Yost v. McKnight*, 865 A.2d 979, 982 n. 6 (Pa. Cmwlth. 2005).

On appeal, the Association only argues that trial court erred in concluding that the structure in question is in compliance with the Declaration. It contends that the structure violates the Declaration's *type* and *use* restrictions, as the Declaration prohibits the building of detached garages and the building of storage structures, and that Homeowners' structure violates both restrictions as the structure appears to be a detached garage and is used for storage. The Association argues that the restriction under Section 2 of the Declaration is both a *type* and a *use* restriction. Specifically, it contends that there is *type* restriction given that the Committee must approve the aesthetic qualities of the structure and a *use* restriction because the structure cannot be used for storage.

We agree with the Association that Section 2 prohibits using a supplemental structure for storage purposes. This prohibition is clear as the Declaration explicitly disallows "storage sheds" and allows accessory buildings only if used "for purposes other than storage." However, the Declaration does not set forth any further limitations on the characteristics of the permissible accessory structure, other than the design and materials used for its construction must match the design and materials used in the dwelling house on the property, that the structure must be located within certain property lines, and that it must be approved by the Committee.

The Association next argues that the restriction under Section 8 of the Declaration is a *type* restriction. That is, the restriction prohibits detached garages. The Association argues that the structure's outward appearance, its two overhead garage doors that are identical to the doors on Homeowners' attached three car

7

garage and its location at the end of the driveway, establish that it is a detached garage. However, while if it was used as a detached garage, the Association's argument would have some merit. The evidence accepted by the trial court is that the structure is not being used as a garage. If it is so used in the future, the Association can bring an action to foreclose such a use.

Homeowners' structure conforms to the specifications set forth in Sections 2 and 8 of the Declaration. The Declaration fails to define "accessory building" or "garage" in any way except that the former may not be used for purposes of storage and the latter may not be used to store less than two or more than four cars. The only restrictions on the outward appearance of the accessory structure is that it must "exactly match" the design and materials of the dwelling house. Homeowners' structure is used primarily for woodworking and recreational purposes, and any storage in the structure is a byproduct of the woodworking and recreational activities; thus, it conforms to the *use* restrictions set forth. The exterior of the structure exactly matches the exterior of Homeowners' house in both the design and materials used. Although the structure may resemble a garage on the outside given its two large overhead doors, it is not used for the storage of any car as prohibited by the Declaration. Thus, it conforms to the Declaration's *type* restrictions.

Accordingly, we affirm the trial court's order.

_____
DAN PELLEGRINI, President Judge


Judge Cohn Jubelirer concurs in the result only.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Zimliki and Lana Zimliki     :
                                    :
            v.                  : No. 428 C.D. 2015
                                    :
New Brittany II Homeowners'      :
Association,                           :
                 Appellant     :

## **O R D E R**

AND NOW, this 15<u>th</u> day of <u>October</u>, 2015, the order of the Court of Common Pleas of York County dated January 13, 2015, at No. 2012-SU-004002-44, is affirmed.

_____
DAN PELLEGRINI, President Judge